<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT P. COWAN, *et al*.,<br><br>          Plaintiffs,<br><br>   v.<br><br>WILLIAM SCHARFENBERG, *et al*.,<br><br>          Defendants. | Civil Action No. 23-09446 (GC) (TJB)<br><br>**<u>MEMORANDUM OPINION</u>** |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). Defendants William Scharfenberg, Bradley Billhimer, Joseph Coronato, Mark Malinowski, and the Ocean County Prosecutor's Office (collectively, Defendants)[1] filed a joint Motion to Dismiss on October 31, 2025. (ECF No. 68.) Plaintiffs opposed, and Defendants replied. (ECF Nos. 70, 71.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion (ECF No. 68) is **GRANTED**.

---

[1] Beacon Homes of New Jersey, LLC is a defendant in this case but separately answered the Amended Complaint. (ECF No. 62.) Any reference to "Defendants" in this Memorandum Opinion, except for in Section III.B, excludes Beacon Homes.

I.      **BACKGROUND**[2]

      A.      **Factual Background**

Plaintiffs Scott Cowan and Jonathan Price sued various entities and individuals, including William Scharfenberg, Assistant Ocean County Prosecutor and owner of Beacon Homes of New Jersey, LLC; Joseph Coronato and Bradley Billhimer, Ocean County Prosecutors; Mark Malinowski, a detective in the Ocean County Prosecutor's Office (the OCPO), and the OCPO. Plaintiffs allege that Scharfenberg, in concert with the other Defendants, illegally targeted them over a business rivalry. (*See generally* ECF No. 55.) Plaintiffs bring claims under 42 U.S.C. § 1983 and pursuant to state law. (*Id*. at 28-38.)[3] The Court assumes familiarity with the relevant facts, which are set forth in greater detail in this Court's prior Opinion. (ECF No. 51.) As such, the Court only includes the facts and procedural background relevant to resolving the instant Motion.

Plaintiffs are the owners and operators of Price Home Group, LLC (PHG), an Ocean County, New Jersey construction business founded in 2013. (ECF No. 55 ¶ 19.) In the aftermath of Hurricane Sandy, New Jersey established the Reconstruction, Rehabilitation, Elevation, and Mitigation (RREM) program to administer grants to eligible homeowners for repairs. (*Id*. ¶¶ 3, 43.) Grant recipients were required to contract with construction businesses admitted to the RREM program's qualified pool of builders. (*Id*. ¶¶ 21, 44-45.) PHG became one such company, having been certified by the New Jersey Department of Community Affairs (NJDCA) on June 1, 2013 and subsequently growing into a successful business over the next two years. (*Id*. ¶¶ 20-21, 44-45.)

---

[2]      On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[3]      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Initially, PHG built homes in the southern portion of Ocean County, largely centered in and around Stafford Township, including areas such as Manahawkin, Ship Bottom, and Little Egg Harbor. (*Id.* ¶ 23.) As the company grew, PHG expanded its operations northward into Brick, Toms River, and Seaside Heights. (*Id.* ¶ 24.) There, PHG competed with another RREM-qualified builder, Beacon Homes, for the same prospective customer base: those whose homes were damaged by Hurricane Sandy. (*Id.* ¶ 34.)

Beacon Homes was owned and operated by Scharfenberg while he was simultaneously serving as an Assistant Ocean County Prosecutor. (*Id.* ¶¶ 32-35.) Plaintiffs contend that Scharfenberg "used Beacon Homes as a weapon and instrumentality in his effort to defame, harass, intimidate and destroy PHG as a competitor." (*Id.* ¶ 40.) According to Plaintiffs, Scharfenberg operated Beacon Homes from OCPO premises using OCPO resources, including equipment and staff. (*Id.* ¶ 41.) Plaintiffs allege that this conduct created a conflict of interest and violated New Jersey ethics laws. (*See id.* ¶¶ 5, 32-42.) Plaintiffs state that Ocean County Prosecutors Coronato and Billhimer were aware of Scharfenberg's ownership and operation of Beacon Homes but nevertheless permitted his "unlawful operation of Beacon Homes at and through the OCPO using the OCPO's personnel and other resources." (*Id.* ¶ 42.)

### 1.    *The Investigation*

Plaintiffs allege that, in 2015, Scharfenberg initiated an improper criminal investigation based on information Scharfenberg learned regarding a civil payment dispute between PHG and its client. (*See id.* ¶¶ 47-51.) According to Plaintiffs, PHG's customer failed to pay the required "draw-down" needed to complete the construction on her home and therefore, "consistent with its contract and the law of New Jersey," Plaintiffs refused to release her house. (*Id.* ¶¶ 48-49.) The customer's son was an ex-Ocean County Sheriff's Office employee who knew Scharfenberg and

3

complained to Scharfenberg about his mother's dealings with PHG. (*Id.* ¶ 47.) Based on those complaints, Scharfenberg initiated a criminal investigation into Plaintiffs. (*Id.* ¶¶ 50-51.)

Plaintiffs contend that in conducting the criminal investigation, Scharfenberg "misused and abused" the power of his office by misrepresenting and falsifying material information during the investigation, concealing his conflict of interest from others involved in the investigation, and personally performing various actions normally left to investigators. (*Id.* ¶ 53.) Specifically, on April 30, 2015—with Billhimer's and Coronato's knowledge—Scharfenberg personally served a subpoena at PHG's accountant's office for Plaintiffs' tax returns and bank statements as well as those of Price and Cowan's wives, and arranged for an IRS agent to be present during the service. (*Id.* ¶¶ 53-56.) Ten days later, on May 10, 2015, Scharfenberg personally interviewed PHG's accountant in the presence of the IRS agent. (*Id.* ¶ 60.) According to Plaintiffs, the IRS thoroughly reviewed all subpoenaed information, including business and personal tax returns, and found no irregularities or unlawful conduct. (*Id.* ¶ 62.)

Nonetheless, Plaintiffs allege that, using information obtained from the subpoenas, Scharfenberg and investigators under his direction, including Detective Malinowski, contacted PHG's customers and informed them that the OCPO was investigating PHG for possible criminal violations. (*Id.* ¶¶ 63-64.) Moreover, Plaintiffs allege that Scharfenberg falsely told PHG customers, manufacturers, and suppliers that Plaintiffs had stolen $1 million and wired it to accounts outside of the country. (*Id.* ¶ 57.)

Plaintiffs assert that Scharfenberg—with Billhimer's and Coronato's knowledge and permission—also directly interfered with Plaintiffs' business operations and "effectively dr[ove them] out of business." (*Id.* ¶¶ 67-68.) Scharfenberg allegedly instructed PHG customers to stop making additional payments to PHG despite their contractual obligations. (*Id.* ¶ 64.) And, based

4

on advice it received from Scharfenberg, Ritz Craft, PHG's exclusive modular home manufacturer, stopped accepting PHG orders. (*Id*. ¶¶ 58, 66.) These and other actions culminated in bankruptcy and state civil proceedings that resulted in the destruction of Plaintiffs' business.

a.    *The Bankruptcy Proceedings*

On March 1, 2016, "[a]s a direct and proximate result of Scharfenberg's interference with PHG," Price and Cowan each filed for Chapter 11 bankruptcy. (*Id*. ¶ 69.) During the proceedings, Plaintiffs allege that Scharfenberg met with the United States Bankruptcy Trustees on or around December 6, 2016. (*Id*. ¶ 70.) In that meeting, Scharfenberg relayed "false and inaccurate information" about Plaintiffs while also concealing the fact that he "owned and operated Beacon Homes and was a competitor of PHG." (*Id*. ¶¶ 70-71.) Scharfenberg also asked the Trustees to depose Cowan using questions provided by the Defendants. (*Id*. ¶ 70.) Plaintiffs allege that Scharfenberg's actions resulted in the conversion of their bankruptcy from a Chapter 11 to a Chapter 7 bankruptcy and seizure of all their assets. (*Id*. ¶ 72.)[4] Furthermore, Scharfenberg's interference led the Trustees to successfully "oppose[ ] the discharge of the bankruptcies." (*Id*.) The bankruptcy court closed Price's case on December 6, 2017 and Cowan's on February 26, 2021, and Plaintiffs did not appeal their unfavorable outcomes. (*See* ECF No. 68-8 at 24, 35.)[5]

---

[4]    Chapter 11 and Chapter 7 bankruptcies have different legal consequences. In a Chapter 11 bankruptcy, debtors and creditors negotiate a plan to allow a debtor to repay creditors while continuing to operate their business. *Czyzewski v. Jevic Holding Corp*., 580 U.S. 451, 455 (2017). In a Chapter 7 bankruptcy, a debtor's assets are liquidated and distributed to creditors. *Id*.

[5]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties. Courts may take judicial notice of public records, including court proceedings. *McPherson v. United States*, 392 F. App'x 938, 940 & n.1 (3d Cir. 2010)

b.    *NJDCA Lawsuit*

In June 2016, the NJDCA filed a civil suit under the Consumer Fraud Act against Plaintiffs in state court. (*See* ECF No. 68-7 at 3-25.) In May 2018, Plaintiffs entered into Consent Judgments with the State: PHG was removed from the RREM program, Plaintiffs' business licenses were permanently revoked, and Plaintiffs were each required to pay close to $500,000 in penalties and restitution. (*See id.* at 60-79, 104-122; ECF No. 55 ¶ 67.) The case was dismissed that same year. (*See* ECF No. 68-7 at 129-131.)

### 2.    *Grand Jury Proceedings and the Indictment*

After the investigation and resulting bankruptcy and state court proceedings, the OCPO presented its criminal case against Plaintiffs to the grand jury on January 6, 2021, which Plaintiffs allege was done under Scharfenberg's direction. (ECF No. 55 ¶ 78.) On January 16, 2021, the grand jury returned a 31-count indictment charging PHG, Price, and Cowan with conspiracy and fraud. (*Id*. ¶ 79.) Plaintiffs allege that, during the grand jury proceedings, Defendants failed to present multiple sources of exculpatory evidence. (*Id*. ¶¶ 81-161.)[6] These criminal proceedings culminated in a plea deal with the State under which Plaintiffs participated in the State's Pretrial Intervention Program. (*See* ECF No. 51 at 26.)

### 3.    *Damages*

As a result of Defendants' alleged conduct, Plaintiffs assert they incurred substantial damages including legal fees of approximately $300,000 for Cowan and $214,000 for Price. (ECF No. 55 ¶¶ 174, 181.) Plaintiffs also contend that Defendants' actions resulted in a deprivation of a "right to earn a livelihood" because they were each forced into (1) bankruptcy and (2) a $500,000

---

[6]    Because the allegations surrounding the criminal case are not relevant to the current dispute, the Court will not recount them in detail. A more thorough overview of these allegations can be found in this Court's previous Opinion. (*See* ECF No. 51 at 6-8.)

settlement with the NJDCA that also resulted in the permanent loss of their contractor and builder licenses. (*Id*. ¶¶ 174, 181.)  Plaintiffs also allege they were damaged by the harm done to their reputations. (*Id*. ¶¶ 174, 181.)

### B.    Procedural Background

#### 1.    *Initial Proceedings*

On August 24, 2023, Plaintiffs filed a six-count Complaint against Scharfenberg, Beacon Homes, Billhimer, Coronato, the OCPO, unidentified OCPO Prosecutor John Does 1-20, Malinowski, and unidentified Investigator Richard Roes 1-20. (*See* ECF No. 1 at 1.)  Plaintiffs brought federal claims under 42 U.S.C. § 1983 and the Declaratory Judgment Act against all Defendants (Counts I and II). (*See id.* at 22-25.)  They also brought state law claims for tortious interference with contractual relations, tortious interference with prospective economic advantage, and defamation against Scharfenberg and Beacon Homes (Counts III, IV and V). (*See id*. at 25-28.)  Finally, they brought a state law civil conspiracy claim against all Defendants (Count VI). (*See id.* at 28-29.)

Defendants Scharfenberg, Billhimer, Coronato, Malinowski, and the OCPO filed a joint Motion to Dismiss on February 18, 2025, (ECF No. 45), and the Court granted in part and denied in part that Motion on August 4, 2025, (ECF No. 51.)  The Court first held that "sovereign immunity bars any claims for damages against the OCPO, Billhimer, Coronato, Scharfenberg and Malinowski in their official capacities" and found the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), did not apply because Plaintiffs did not seek prospective injunctive relief. (*Id.* at 14-15.)  The Court therefore dismissed all claims against those Defendants in their official capacities without prejudice. (*See* ECF No. 52.)

Turning to claims against Defendants in their individual capacities, the Court began with Plaintiffs' § 1983 claims. (*See* ECF No. 51 at 16-28.)  The Court construed Plaintiffs' allegations

as asserting a malicious prosecution claim under the Fourth Amendment and a claim for deprivation of liberty and property interests in Plaintiffs' business without due process of law under the Fourteenth Amendment. (*Id.* at 16.)

As for malicious prosecution, the Court found that "[a]ny actions Scharfenberg took in connection with the grand jury proceedings against Plaintiffs [were] afforded absolute immunity" as were Scharfenberg's "withholding of evidence from Plaintiffs during discovery" and his "decision to prosecute Plaintiffs, despite his alleged conflict of interest." (*Id.* at 21-22.) However, the Court held that absolute immunity did not "bar claims based on allegations that Scharfenberg engaged in misconduct during the criminal investigation or provided false information to the United States Bankruptcy Trustees" nor did it apply "to the allegedly false statements made to PHG's vendors." (*Id.* at 23.) Nonetheless, the Court dismissed the malicious prosecution claim against Scharfenberg—and all other named Defendants under that Count—with prejudice. The Court reasoned that Plaintiffs did not, and could not, allege the criminal proceeding ended in their favor, which is a required element of a malicious prosecution claim, given that Plaintiffs entered into a "negotiated plea deal with the State with admission into the State's Pretrial Intervention Program . . . conditioned upon payment of restitution and compliance with probation and other restrictive conditions." (*Id.* at 25-28.)

As for the deprivation of liberty and property interests in Plaintiffs' business claim, the Court allowed it to move forward given that Defendants only challenged the malicious prosecution claim, but the Court only allowed it to proceed "to the extent it is premised on allegations unrelated to Scharfenberg's initiation and pursuit of the criminal proceedings." (*Id.* at 16-17 & n.12.) The Court warned that should Plaintiffs seek to amend their Complaint, "the Court instructs [Plaintiffs] to plead each § 1983 claim as a separate count, . . . specify which constitutional right is being

8

violated and set forth specific factual allegations supporting each element of the claim." (*Id.* at 17 n.12).

The Court then addressed the remaining claims.  It dismissed the Declaratory Judgment Act claims against all Defendants without prejudice because Plaintiffs' allegations were based solely on prior—rather than ongoing—conduct and were duplicative of the § 1983 claims.  (*Id.* at 28-29.)  And the Court dismissed the state law tort claims without prejudice because Plaintiffs failed to allege that Defendants were provided with the requisite notice under the New Jersey Tort Claims Act.  (*Id.* at 29-30.)[7]

### 2.    *Current Proceedings*

On September 3, 2025, Plaintiffs filed the operative Amended Complaint alleging largely the same facts.  (*See* ECF No. 55.)[8]  But the Counts are modified.  First, abandoning their malicious prosecution claim, Plaintiffs bring a § 1983 claim against Scharfenberg, Malinowski, Billhimer, and Coronato for "Depriving Plaintiffs' Liberty and Property Interests Without Due Process of Law: Destruction of Plaintiffs' Business Interests" under "the Fifth Amendment as applied to the states through the Fourteenth Amendment" (Count I).  (*Id.* at ¶¶ 168-174.)  Second, Plaintiffs bring a § 1983 claim against those same four Defendants for "Depriving Plaintiffs' Liberty and Property Interests Without Due Process of Law: Defamation, Harassment and Intimidation" also under the Fifth Amendment as applied to the states through the Fourteenth Amendment (Count II).  (*Id.* ¶¶ 175-181.)  Next, Plaintiffs asserts tortious interference with contractual relations, tortious

---

[7]    The Court also dismissed all of PHG's claims with prejudice because it lacked standing given that it no longer exists as a legal entity.  (*See* ECF No. 51 at 30-31.)  PHG is not a named Plaintiff in the Amended Complaint.  (*See* ECF No. 55.)

[8]    Indeed, Plaintiffs acknowledge as much: "It is true that, in the Amended Complaint, [P]laintiffs have re-pled many of the same facts."  (*See* ECF No. 70 at 5.)

interference with prospective economic advantage, and defamation claims against Scharfenberg and Beacon Homes, an entity which Plaintiff alleges is Scharfenberg's alter ego (Counts III-V). (*Id.* ¶¶ 182-194.)  Finally, Plaintiff brings a claim for civil conspiracy against all Defendants (Count VI).  (*Id.* ¶¶ 178-180.)[9]

On October 31, 2025, Defendants Scharfenberg, Malinowski, Billhimer, Coronato, and the OCPO filed a Motion to Dismiss the Amended Complaint.  (ECF No. 68.)  That Motion is now fully briefed and pending before this Court.

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab.*

---

[9]     Plaintiffs also bring this claim against Beacon Homes.  (*See* ECF No. 55 ¶¶ 178-180.)

*Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis* v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016).

III.   **DISCUSSION**

A.   **Section 1983 Claims**

Count I and II of Plaintiffs' Amended Complaint are brought under 42 U.S.C. § 1983 for deprivation of liberty and property interests without due process of law.  Defendants first argue that these claims are barred by the two-year statute of limitations.  (ECF No. 68-1 at 30-32.)  Second, Defendants contend that even if the claims are not time-barred, Plaintiffs fail to state a claim under either Count because Defendants did not cause Plaintiffs to be deprived of their interests and Plaintiffs were afforded due process when they lost those interests.  (*Id.* at 32-40.)  Third, Defendants argue that they are entitled to qualified immunity.  (*Id.* at 40-44.)  The Court will only address the first argument because it agrees Plaintiffs' § 1983 claims are time-barred.

Defendants argue that Plaintiffs' § 1983 claims must have accrued after August 2021 to be actionable, and "the Court has conferred absolute immunity on OCPO Defendants for matters related to the grand jury and prosecution of Plaintiffs," so "the only remaining allegations as to the due process claims involve Defendants' conduct during the investigation phase."  (ECF No. 68-1 at 32.)  But these remaining allegations, Defendants contend, predate August 2021 given that the indictment was itself issued before then in January 2021.  (*Id.* at 32-33.)  Plaintiffs respond that the statute of limitations did not begin to run until the criminal charges against them were dismissed, which would make their § 1983 claims timely.  (ECF No. 70 at 11.)

"[A] section 1983 claim arising in New Jersey has a two-year statute of limitations." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  "Federal law . . . governs the issue of what constitutes accrual." *Id.*  (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  In the context of a Fourteenth Amendment due process claim, courts have previously held that the statute of limitation

11

period begins when the plaintiff's deprivation occurs.  *See, e.g., Wilson v. City of Newark, N.J.*, Civ. No. 06-5219, 2007 WL 1135301, at *2 (D.N.J. Apr. 16, 2007) ("[The p]laintiff first became aware that his property was lost on June 27, 2005. It follows that the right to institute and maintain a suit first arose on June 27, 2005[.]").

However, the Supreme Court has recently clarified the proper inquiry.  It stated that "[a]s a general matter, the statute of limitations begins to run when the plaintiff has a complete and present cause of action." *Reed v. Goertz*, 598 U.S. 230, 235 (2023) (internal quotation marks and citations omitted).  "To determine when a plaintiff has a complete and present cause of action," *Reed* explained, a court must therefore "focus[] . . . on the specific constitutional right alleged to have been infringed. *Id.* at 235-36.  "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Id.* at 236.  The Supreme Court ruled that a procedural due process claim therefore does not accrue "when the deprivation occurs" and instead the statute of limitations begins to run "only when the State fails to provide due process."  *Id.* (internal quotation marks and citations omitted).  In other words, both elements of the claim must have occurred for the accrual period to begin.

In *Reed*, a plaintiff seeking post-conviction relief filed a motion for DNA testing, which was denied by the state court and affirmed on appeal, and he thereafter brought a § 1983 suit in federal court challenging the DNA testing law on due process grounds.  *Id.* at 233, 236.  The Supreme Court held the § 1983 accrual period began when the appellate court denied plaintiff's motion for a rehearing rather than when the trial court denied his initial motion.  *Id.* at 236.  The Supreme Court reasoned that "[i]f the statute of limitations for a § 1983 suit like [the plaintiff's] began to run after a state trial court's denial of a plaintiff's motion for DNA testing . . . the plaintiff

would likely continue to pursue relief in the state system and simultaneously file a protective federal § 1983 suit challenging that ongoing state process," which would be a result "counter to core principles of federalism, comity, consistency, and judicial economy." *Id.* at 236-37 (internal quotation marks and citations omitted).

Here, Plaintiffs' § 1983 claims are based on alleged violations of the Fourteenth Amendment's Due Process Clause. (*See* ECF No. 55 ¶¶ 170, 177; *see also* ECF No. 51 at 17 n.12 (construing original Complaint "as claiming that Defendants' conduct deprived Plaintiffs of their liberty and property interests in their business without due process of law").)  In both Counts I and II, Plaintiffs allege that because of Defendants' actions, Plaintiffs were deprived of a "right to earn a livelihood" when they were forced into bankruptcy, coerced into a $500,000 settlement, and required to permanently relinquish their business licenses. (*Id.* ¶¶ 174, 181).[10]  To be actionable under *Reed*, the state process that could have remedied these deprivations must have occurred within two years prior to Plaintiffs' filing the Complaint on August 23, 2023. (*See* ECF No. 1.) [11]

---

[10]     Beyond alleging deprivations of a "right to earn a livelihood," as a result of the bankruptcy and settlement proceedings, Plaintiffs' Amended Complaint is unclear about whether it intends to assert other Fourteenth Amendment deprivations, and in many instances Plaintiffs appear to reuse verbatim the language used in their original Complaint, some of which concerns the criminal proceedings against Plaintiffs. (*Compare* ECF No. 1 ¶¶ 153-159, *with* ECF No. 55 ¶¶ 168-174, *and id.* ¶¶ 175-181.)  But in its previous Opinion, the Court stated it would allow Plaintiffs' § 1983 claim to survive only "to the extent it is premised on allegations unrelated to Scharfenberg's initiation and pursuit of the criminal proceedings against Plaintiffs." (ECF No. 51 at 17 n.12.) While Plaintiffs also allege that they suffered "damage to their reputations" due to Defendants' actions, (ECF No. 55 ¶¶ 174(d), 181(d)), to the extent this harm occurred within the statute of limitations period and is unrelated to the criminal proceedings, the claim would still fail because "harm to reputation alone d[oes] not suffice for a constitutional tort based on procedural due process." *Boyanowksi v. Cap. Area. Intermediate Unit*, 215 F.3d 396, 402 (3d Cir. 2000) (citing *Paul v. Davis*, 424 U.S. 693, 711-12 (1976)).

[11]     Plaintiffs rely solely on *Patyrak v. Agpar*, 511 F. App'x 193 (3d Cir. 2013) in support of their argument that the accrual period began when the charges against Plaintiffs were dismissed. (*See* ECF No. 70 at 11.)  In *Patyrak*, the plaintiff brought claims for excessive force and malicious prosecution under § 1983.  511 F. App'x at 194.  As the Third Circuit stated in that case, accrual is based on "when the plaintiff has a complete and present cause of action," and the dismissal of

13

Plaintiffs do not allege when those alleged deprivations or state processes ended, but matters of public record demonstrate that these events all took place outside of the statute of limitations period. Public court dockets[12] reveal that Cowan's bankruptcy proceedings were terminated by February 26, 2021, Price's ended on December 6, 2017, and neither was appealed. (*See* ECF No. 68-8 at 24, 35). Public dockets similarly reveal that the settlement between Plaintiffs and the NJDCA that resulted in payment of $500,000 and forfeiture of Plaintiffs' business licenses occurred in May 2018, and the state court case was dismissed without appeal in that same year. (*See* ECF No. 68-7 at 60-79, 104-122, 129-131.) Because these records make clear that these

---

the criminal proceedings was relevant to the plaintiff's causes of action. *Id.* at 195 (internal quotation marks and citation omitted). Here, by contrast, the resolution of the criminal proceedings is not relevant to whether Plaintiffs have a cause of action for a Fourteenth Amendment due process claim related to deprivations of their livelihood stemming from the bankruptcy and settlement proceedings. Therefore, Plaintiffs' lone case is inapposite.

[12] "The Court is permitted to consider matters of public record, including court-filed documents, at the motion to dismiss stage." *Womack v. City of Phila.*, Civ. No. 24-1167, 2024 WL 4466680, at *2 n.2 (E.D. Pa. Oct. 10, 2024) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). The Court may rely on these types of documents to reconstruct the relevant chronology of events. *See., e.g.*, *McPherson*, 392 F. App'x. at 940 & n.1 (taking "judicial notice of the official record of prior court proceedings" in motion to dismiss to establish date of the plaintiff's criminal conviction); *Hadesty v. Rush Twp. Police Dep't,* Civ. No. 14-2319, 2016 WL 1039063, at *5, *9 (M.D. Pa. Mar. 15, 2016) (considering prior criminal docket to determine when the plaintiff's charges were filed and dismissed for purposes of evaluating malicious prosecution claim on motion to dismiss). And, "[a]lthough the running of the statute of limitations is an affirmative defense, it can be properly raised on the pleadings when the date on which the alleged claims accrued is apparent from the face of the pleading, public filings, or other documents integral to the complaint." *Sanford-El v. Cannon*, Civ. No. 19-08776, 2020 WL 4745996, at *4 n.5 (D.N.J. Aug. 17, 2020) (citing *McPherson*, 392 F. App'x. at 943); *see also Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 91-92 (3d Cir. 2012) (affirming dismissal when district court used "limited discovery materials" on motion to dismiss to determine whether the plaintiff timely filed discrimination complaint and "conclude[d] that amended complaint was untimely"); *Bishop v. Univ. of Scranton*, Civ. No. 22-01831, 2025 WL 823253, at *3 (M.D. Pa. Mar. 14, 2025) (finding claim time-barred based on incorporated-by-reference document and dismissing claim with prejudice).

14

alleged deprivations and the state proceedings that could have remedied them occurred before August 23, 2021, Plaintiffs' § 1983 claims are time-barred. *See Reed*, 598 U.S. at 235-37.

Accordingly, the Court dismisses Counts I and II. The Court will give Plaintiffs one final opportunity to amend their § 1983 due process claims, but the Court instructs Plaintiff to carefully consider whether any deprivations and corresponding denial of process occurred within the statute of limitations of period.

### B.      State Law Claims

Counts III through VI of the Amended Complaint assert state law tort claims against all Defendants. (*See* ECF No. 55 at 33-38). When a court dismisses all claims over which it had original federal question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). As Plaintiffs' federal claims have been dismissed at this early stage, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over these claims. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (internal quotation marks and citation omitted); *Lawless v. New Jersey Dep't of Corr.*, Civ. No. 12-14670, 2022 WL 2702961, at *1 (D.N.J. July 12, 2022) ("Where federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state law claims." (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)).

15

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 68) is **GRANTED**.  An appropriate Order follows.


Dated: April 22, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

16